August 8, 2002



P.O. Box 893
E. Falmouth, MA 02536

Honorable Barbara J. Rothstein
Chief United States District Judge
Western District of Washington
705 U.S. Courthouse
1010 Fifth Avenue, S.W.
Seattle, WA 98104

Re:    Case No. CR89-100R
       U.S. v. Darris Mark Durall
       a/k/a Darris Mark Tuck



CR 89-00100  #00000028

Dear Judge Rothstein:

On August 4, 1989, the Court sentenced Darris Mark Durall as an armed career criminal
to fifteen (15) years of imprisonment. Your critical observations during the above
hearing of Mr. Durall's pattern of criminal behavior since the late 1970's were accurate.
Your reservations about accepting the Plea Agreement submitted by the Government
were well founded.

Unfortunately, Mr. Durall chose not to change his behavior even after eleven (11) years
of incarceration. This is evidenced by his continued pattern witnessed and/or
experienced by myself and others. The following are corroborated actions of Mr. Durall,
which, I feel, may constitute violations of the conditions of his supervised release:

- Termination of employment by two employers due to his sexual harassment of
  numerous female employees and his dating/victimization of female Club members
- Failure to report his terminations of employment
- Two outstanding Protection Orders
- Alcohol and drug abuse
- Unauthorized travel outside the area restricted by the conditions of his supervision:
  Oregon and Hawaii
- Unlawful entry into apartment buildings

- Initiation of a fight at a downtown Seattle pub
- Failure to report any contact with law enforcement: he was issued over a half dozen parking citations, one of which went to collection for nonpayment, while operating my vehicle. He held out such vehicle to be his property.
- Unauthorized use of my vehicle to travel outside the restricted area
- Unlawful transfer of funds: he was ordered by his former employer (General Manager) to return $600 he attained through duplicity from a newly hired Accountant after his termination
- Misrepresentation of himself- both past and present- in order to facilitate scams that involve his solicitation/attainment of money and use of vehicles from unsuspecting victims

Michael J. Larson, U.S. Probation Officer, is aware of Mr. Durall's above actions and has taken prompt steps to corroborate such. His behavior clearly indicates that he has no intent to rehabilitate and thus cease his victimization of innocent, unsuspecting individuals, such as myself.

Admittedly upset about my victimization, I researched Mr. Durall's extensive criminal history, including his "cooperation" with federal and state law enforcement agencies. The seriousness of his history alarms me. On August 3, 2002, I relocated from Seattle back to the East Coast due to difficulty I experienced with the SPD in regard to enforcement of a temporary protection order against Mr. Durall. I am disturbed not only by his conduct with me, but also against other women. There are at least two protection orders against Mr. Durall. There also are many other women, who have been in similar situations with him since his supervised release on August 21, 2000.

It appears that Mr. Durall must again be incarcerated to protect the community from his deviant behavior. As such, I believe his current actions warrant a probation revocation hearing. Thank you for your time and consideration.

Sincerely,

*Monique M. Spivey*

Monique M. Spivey

Enclosures

ENTERED
ON DOCKET

AUG 1 1989

By Deputy _____

OC: OSMO

Judge Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA, )
)
                    Plaintiff, )    NO.  CR89-100R
)
            v.                 )    JUDGMENT
)    AND COMMITMENT
DARRIS MARK DURALL,            )
a/k/a Darris Mark Tuck,        )
Snohomish County Jail          )
Everett, Washington            )
SSN: 518-7605917               )
)
                    Defendant. )
_____)

FILED
LODGED
RECEIVED

AUG ? - 1989

CLERK U.S. DISTRICT COURT

On this 4th day of August, 1989, came the attorney for the
Government, and the defendant appeared in person with his
counsel, Joseph Schlesinger.

IT IS ADJUDGED that the defendant upon his pleas of GUILTY,
and the Court being satisfied there is a factual basis for the
pleas, has been convicted of the offenses of violating Title 18,
United States Code, Sections 922(g) and 924(e) and 2, the armed
career criminal statute, as charged in Count I of the
Information, and Title 18, United States Code, Section 371,
conspiracy, as charged in Count II of the Information, and the
Court having asked the defendant whether he has anything to say
why judgment should not be pronounced, and no sufficient cause to
the contrary being shown or appearing to the Court,

JUDGMENT AND
COMMITMENT/TUCK - 1
(1230Z)

UNITED STATES ATTORNEY
3600 Seafirst Fifth Avenue Plaza
Seattle, WA  98104
(206) 442-7970

'RM OBD 183
MAR 83

IT IS ADJUDGED that the defendant is GUILTY as charged and is convicted.

IT IS ADJUDGED as to Count I, pursuant to the Sentencing Reform Act of 1984, Pub. L. No. 98-473, tit. 2, ch. 2, 98 Stat. 1987, that defendant is committed to the custody of the Attorney General or his authorized representative for imprisonment for a term of FIFTEEN (15) YEARS to be followed by a term of supervised release of FIVE (5) YEARS under the following conditions:

1.   That defendant obey all local, state, and federal laws;

2.   That defendant comply with the "standard" conditions of supervised release as set forth in Section 5B1.4 of the Sentencing Guidelines.

3.   That defendant participate in a substance abuse program, to include random testing, as directed by the probation office.

IT IS ADJUDGED as to Count II, pursuant to the Sentencing Reform Act of 1984, Pub. L. No. 98-473, tit. 2, ch. 2, 98 Stat. 1987, that defendant is committed to the custody of the Attorney General or his authorized representative for imprisonment for a term of FIVE (5) YEARS.  This sentence of imprisonment as to Count II is to run concurrently with the sentence of imprisonment imposed on Count I.

IT IS THE RECOMMENDATION of the Court that defendant be imprisoned in a facility outside the Bureau of Prison's Western Region.

JUDGMENT AND
COMMITMENT/TUCK - 2
(1230Z)

UNITED STATES ATTORNEY
3600 Seafirst Fifth Avenue Plaza
Seattle, WA  98104
(206) 442-7970

RM OBD 181
MAR 8•

IT IS ORDERED that defendant be kept separated from Roger Jonathan Scott Campbell, Stan Philip Peterson, and Edward Gordon Westerdahl III, defendants in CR89-87R (W.D. Wash.), during his period of confinement.

The Court finds that the defendant has no income, or likelihood of future income, and no substantial assets. Therefore, defendant's financial situation precludes payment of a fine and the costs of incarceration, and for that reason, the Court departs from the Guidelines and imposes neither.

IT IS ORDERED that the Clerk deliver a certified copy of this Judgment and Commitment to the United States Marshal or other qualified officer and that the copy serve as the commitment of the defendant.

DATED this  9th  day of  August  , 1989.

_Barbara Rothstein_
CHIEF UNITED STATES DISTRICT JUDGE

Presented by:

_Thomas C. Wales_
THOMAS C. WALES
Assistant United States Attorney

JUDGMENT AND
COMMITMENT/TUCK - 3
(1230Z)

UNITED STATES ATTORNEY
3600 Seafirst Fifth Avenue Plaza
Seattle, WA  98104
(206) 442-7970

ORM OBD 183
MAR 83

1

<pre>
1                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
2                           AT SEATTLE

3    UNITED STATES OF AMERICA, )

4               Plaintiff,     )

5          vs.                 )   CR89-100R

6    DARRIS M. DURALL, a/k/a   )

7    DARRIS TUCK,              )

8               Defendant.     )   ORIGINAL

9    _____  )
</pre>

FILED
LODGED
RECEIVED

SEP 1 1989

CLERK US DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
                              DEPUTY
BY

10

11            VERBATIM TRANSCRIPT OF PROCEEDINGS, before the

12   Honorable BARBARA J. ROTHSTEIN, United States District Judge,

13   occurring on August 4, 1989, at the United States Courthouse,

14   Seattle, Washington.

15

16

17

18

19

20

21

22

23

24

25

2

1    MR. WALES:  Good morning, Your Honor, Tom Wales for

2    the United States.

3    MR. SCHLESINGER:  Good morning, Joe Schlesinger.

4    It's obvious Mr. Hillier is not here.  He discussed the case

5    with me, with my client, his client, and Mr. Tuck and I have

6    discussed the matter, and he is prepared to go ahead with me at

7    sentencing this morning.

8    I have read the file, Your Honor.  I think probably

9    everyone else here is more conversant with the facts than I am.

10    My client is very concerned about his safety given his level of

11    cooperation, and for that reason we would ask for a

12    recommendation that he be designated to an institution outside

13    this region, preferably the northern region.  And we have done a

14    little investigating of Otisville, which is a Level Four

15    institution, is probably the most suitable one.  We would be

16    asking the Court for a recommendation as to that.

17    Obviously we are asking the Court to accept the

18    plea agreement.  I heard Mr. Wales stand up to plea agreements

19    like this before and put defense counsel to shame, including

20    myself, as to reasons it ought to be accepted, and I'll leave

21    that to him in this case.

22    Mr. Tuck would like to explain himself to the

23    Court.

24    THE COURT:  Do you want to address the Court, Mr.

25    Tuck?

1        MR. TUCK:  I do want to say a few words.  I never

2    hurt anybody in my life, you know.  I recognize the potential

3    for somebody getting hurt and the emotional distress created.  I

4    have accepted the responsibility for what I did, and I think the

5    Government has benefited from my cooperation.  I agreed to

6    cooperate with the Government shortly after my arrest before I

7    was charged with any federal charges.  And, you know, there have

8    been some threats that have been made against me, some

9    obstruction charges filed, and I take those threats very

10   seriously.

11       When I was in Court a couple weeks ago, they

12   mentioned the names of people who were in custody.  They put a

13   contract out on my life, you know.  Throughout this

14   investigation I believe the Government has been sensitive to my

15   concerns about my safety.  But, you know, like when the agent

16   called me, or Mr. Wales needed to speak to me about the case, on

17   one or two three occasions the jail staff announced over the

18   intercom for me to call the special agent in charge of my case.

19   I end up getting assaulted.  I was, you know, in the hospital.

20   I couldn't walk for six weeks.

21       So all I am saying, I don't have any regrets about

22   this code of silence.  I don't see any value in that, when I get

23   out, that I cooperated with the Government.  I feel that I did

24   the right thing.  But I have also seen what happens when you

25   have that stigma when you do cooperate, and the retaliation

1    that, you know, you can experience.

2          That is why, you know, I am asking the Court if you

3    would accept the agreement, if you would recommend an

4    institution other than the ones where the inmates, other

5    inmates, the defendants are going to be, but also outside this

6    region because they have all been to prison several times and

7    they know a lot of different people in the prison system,

8    Phoenix and Lompoc.  And for that reason we are asking for that.

9          I am sorry for what I did.  And 15 years seems like

10   a long time, you know, grade school, but I think there is still

11   an opportunity for me to make a positive difference with my

12   life, and I just encourage the Court to accept my plea.  Thank

13   you.

14             THE COURT:  Mr. Wales.

15             MR. WALES:  Your Honor, I will be relatively brief.

16   Mr. Tuck is obviously guilty of a very extensive list of very

17   serious crimes.  He has agreed to plead guilty to a stipulated

18   15-year sentence, and we would urge the Court to accept that

19   plea agreement both because we believe the 15-year sentence,

20   which is a guideline sentence, and without the possibility of

21   parole, is appropriate under the circumstances, in any event.

22   But we believe it is particularly so in light of Mr. Tucks'

23   cooperation.  That cooperation, as he has suggested, has been

24   full and complete, essentially from the outset following his

25   arrest.  It has involved being extensively debriefed, both in

5

1    this jurisdiction and in the district of Oregon.  On numerous

2    occasions Mr. Tuck voluntarily made a number of telephone calls

3    that were recorded to his co-defendants in the case, and through

4    his cooperation, and only through it, were we led to other

5    witnesses who corroborated his testimony and provided, prepared

6    to provide damaging testimony with respect to the defendants.

7                Mr. Tuck cooperated really beyond the bounds called

8    for in his plea agreement.  He testified before the grand jury

9    extensively, and he continued to cooperate even in the face of

10   what we are convinced through corroborating evidence provided by

11   another witness, was in fact a death threat made to him by Scott

12   Campbell while they were both in the lockup downstairs of this

13   building.  I think it fair to say Mr. Tucks' cooperation led

14   directly to the guilty pleas with which the Court is familiar

15   which were entered as of yesterday, and we would ask the Court

16   for all of those reasons to accept the plea agreement.

17               THE COURT:  The Court is ready to pronounce

18   sentence at this time, and unless counsel sees some reason I

19   should not.

20               MR. SCHLESINGER:  No, Your Honor.

21               THE COURT:  Mr. Tuck, I am going to accept the plea

22   agreement and I am going to sentence you to the 15 years.  And I

23   believe there is a period of supervised release after that, and

24   I am going to impose a period of five years supervised release

25   with special conditions, one of which is the substance abuse

1   program be entered into by you, if being advisable by the United

2   States Probation Office.  And, of course, the usual conditions

3   of a supervised release period, Mr. Tuck, that you not violate

4   any laws of the state in which you reside or any federal laws.

5           And let me make a comment, Mr. Tuck, for your

6   benefit.  I am going along with the plea agreement.  I do have

7   some reservations about it, but I think in light of your

8   cooperation, which, according to Mr. Wales, has been genuine,

9   has been extensive and has been possibly some great danger to

10  yourself.  I am going along with it also because it falls within

11  the range of what an acceptable sentence would be.

12          But let me say this to you, Mr. Tuck, your past

13  history and your violations leave this Court to believe it is

14  only a matter of luck that you haven't hurt someone.  I know you

15  take some sort of consolation in the fact although you have used

16  guns, explosives, nobody really got hurt, as if in some way that

17  means that you weren't out to hurt anyone or you wouldn't really

18  have hurt anyone.  The kinds of crimes you have committed are

19  about as violent as you can get short of hurting someone.  Had

20  something gone wrong, had somebody resisted, had you thought

21  somebody resisting or endangering you in some way, the Court is

22  persuaded somebody would have got hurt.

23          When you are out on that supervised release, or if

24  you come before this Court or any other Court again, rest

25  assured, Mr. Tuck, that 15 years will look like a light

1    sentence, because you'd be going away, as far as I can read your
2    history, you'd be going away for the rest of your life.  And you
3    are a young person, and it's clear to the Court you are an
4    intelligent person.  How much ability you have to change your
5    behavior is entirely up to you.  I strongly urge you to spend
6    this time doing that.

7                     And I know jails have all kinds of influences and
8    settings, and you can use the time to change, you can use the
9    time to plan for when you get out to continue the way you have
10   been going, you will be a fairly young person when you get out.
11   Let me tell you the record you build up for yourself, you better
12   realize what you are facing if you break the law again after you
13   get out.  I feel I need to say that.  Even though it's 15 years,
14   it's going to take awhile to change this pattern.  And I
15   strongly urge you to do so.

16                    I'll accept a recommendation that he be
17   incarcerated outside the district, but I will not specify an
18   institution.  I just, I don't know enough about Otis, or whether
19   he is appropriate for Otis, or whether Otis is overcrowded.  I
20   don't want to get into that.  But I think it is appropriate that
21   the place of incarceration be outside this region.  So if that
22   would be included, I think that is a fair request.

23                    MR. WALES:  Your Honor, would the Court consider
24   including in the Judgment and Commitment a further order that
25   Mr. Tuck be kept separate?

8

1       THE COURT:  Yes.  That would be good wording

2   because we don't know, maybe some of these will end up outside

3   the region, and that will probably be good language.

4       And I am not going to impose a fine in light of the

5   length of the sentence.  I think a fine would be impractical.

6       Anything else?

7       MR. SCHLESINGER:  Nothing further, Your Honor.

8       Your Honor, there were two counts.

9       MR. WALES:  Your Honor, I understood from the

10  Court's acceptance of the plea agreement the Court intended

11  Count I to be a sentence of 15 years, Count II five years

12  running concurrent?

13      THE COURT:  Exactly.

14      MR. SCHLESINGER:  Thank you, Your Honor.

15      THE COURT:  Mr. Wales, are you going to be around

16  for awhile?

17      MR. WALES:  Certainly.

18      THE COURT:  It's going to be a long morning, and I

19  don't know if you want to wait especially.  I have one matter

20  pertaining to all the things that happened yesterday with the

21  pleas to discuss with you.  If you have nothing further before

22  the Court, maybe you could give me a call later.

23      MR. WALES:  Certainly.  In fact, perhaps I could

24  stop into the Court's chambers and leave word where I will be

25  and perhaps they will call me.